**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

**UNITED STATES OF AMERICA**

**v.**

**EDDIE RAY KAHN,**

*Defendant.*

**Case No. 08-cr-271-RCL-1**

## MEMORANDUM OPINION

Having served more than half of his 36-month term of supervised release, defendant Eddie Ray Kahn moves for early termination pursuant to 18 U.S.C. § 3583(e)(1). Def.'s Mot., ECF No. 584. The government opposes Mr. Kahn's motion. *See* ECF No. 585. The U.S. Probation Office recommends that the Court grant Mr. Kahn's motion. ECF No. 589 at 2. Upon consideration of the submissions, the record herein, and the applicable law, the Court will **GRANT** Mr. Kahn's motion for early termination of supervised release.

## I. BACKGROUND

Mr. Kahn founded and operated American Rights Litigators ("ARL"), a large-scale organization that sold tax defiance schemes to help thousands of individuals obstruct efforts by the Internal Revenue Service ("IRS") to collect taxes for nearly a decade. *See* Presentence Investigation Report ("PSR"), ECF No. 357, at ¶¶ 14–16. It did so through a variety of schemes, including by selling fictitious financial instruments to its customers and encouraging them to send those documents to the U.S. Department of the Treasury and to the IRS in purported payment of their taxes. *Id.* ¶ 23. The organization was registered in Florida, *id.* ¶ 15, but Mr. Kahn promoted the scheme—and the organization's misrepresentations of federal law—throughout the country via seminars, videotapes, phone calls, newsletters, and a book. *Id.* ¶ 17.

In 2006, a jury in the Middle District of Florida convicted Mr. Kahn of conspiring to defraud the United States, in violation of 18 U.S.C. § 371, and making false or fraudulent claims to the United States, in violation of 18 U.S.C. § 287. *See* Jury Verdict, *United States v. Snipes et al.*, No. 5:06-cr-022-2 (WTH) (PRL), ECF No. 418. He was sentenced to a total of 120 months' imprisonment, followed by 36 months of supervised release. *See* J., *Snipes*, ECF No. 459.

In 2010, a jury in this District convicted Mr. Kahn of conspiring to defraud the United States and commit mail fraud in violation of 18 U.S.C. §§ 2 & 371 and mail fraud in violation of 18 U.S.C. §§ 2 & 1341. Verdict Forms, ECF No. 328, at 1. The Court sentenced Mr. Kahn to a total of 240 months' imprisonment, followed by 36 months of supervised release. J., ECF No. 409. Mr. Kahn's conviction was affirmed on appeal. Mandate, ECF No. 484.

When Mr. Kahn had approximately 59 months remaining on his term of imprisonment, accounting for good behavior time, he filed an emergency motion for compassionate release. Emergency Mot., ECF No. 559. Based on his advanced age and serious medical conditions, he asked this Court to reduce his sentence to time served and allow him to "serve some or all of his supervised release term on home detention." *Id.* at 7. The government did not oppose Mr. Kahn serving the rest of the 59 months of his sentence on home detention. Gov't Resp., ECF No. 564. On December 22, 2020, this Court granted Mr. Kahn's motion in part, reducing his sentence to time served and converting his 36-month period of supervised release to home detention.[1] Mem. Order, ECF No. 566.

Mr. Kahn now argues for early termination of supervised release under 18 U.S.C. § 3583(e)(1). He argues that early termination of his home confinement is proper because he has

[1] The Court's order also required that Mr. Kahn be subject to location-monitoring during the 36-month home confinement period. *Id.* Mr. Kahn later moved to modify his conditions of release remove this condition, which the government did not oppose. Unopposed Mot., ECF No. 580. This Court granted Mr. Kahn's request. Order, ECF No. 581.

complied with all of the conditions of his supervised release, he is of advanced age, and he has no history of violence. Def.'s Mot. at 4–5. Mr. Kahn further represents that, were this Court to terminate his supervised release, "he would not walk away unsupervised; he would continue to be supervised by the same U.S. Probation Office . . . from his case in Florida. The only practical effect of terminating his supervision early in this District would be that he is no longer subject to home confinement." *Id.* at 6. He asks for the early termination of his supervised release so that he can travel and spend time with his family, including his wife, two children, and eight grandchildren. *Id.*

After receiving Mr. Kahn's motion, the Court ordered the U.S. Probation Office to provide a recommendation on the motion. *See* Minute Entry (Oct. 11, 2022). In its response, the Probation Office reported that Mr. Kahn currently maintains a stable residence with his wife in Colorado, has not engaged in any criminal conduct while under supervision, and has provided a DNA sample in accordance with his terms of supervised release. *Id.* Additionally, the Probation Office reports that Mr. Kahn has made "$5,589.44, in restitution payments with an outstanding balance of $19,410.56"[2] and that "[t]here is no evidence to suggest he is not compliant with his financial disclosure." Probation Off. Petition at 2. The Probation Office recommended that this Court grant Mr. Kahn's motion, concluding that, "[i]n [its] assessment, Mr. Kahn does not presently pose a specific risk to the community" and that the Probation Office "do[es] not believe his removal from supervision will result in an increase[d] chance of a specific risk to the community." *Id.*

The government opposes Mr. Kahn's motion. The government agrees with Mr. Kahn that he has thus far complied with his terms of supervised release. Gov't Opp'n at 2. However, the government argues that the seriousness of Mr. Kahn's crime and statements attributed to Mr. Kahn

[2] Though the Probation Office narrative uses the word "restitution," Mr. Kahn was sentenced to pay a fine, not restitution. *See* Probation Off. Petition at 1.

posted to a blog suggest that he still poses a danger to the community and thus weigh against an early termination of supervised release. *Id.* at 3–4.

## II. LEGAL STANDARD

Motions for early termination of supervised release are governed by 18 U.S.C. § 3583(e)(1). That section allows courts to terminate a term of supervised release early when three conditions have been met and when certain factors set forth in 18 U.S.C. § 3553(a) support the early termination. *See* 18 U.S.C. § 3583(e)(1). First, a defendant seeking early termination must have served at least one year of supervised release. *Id.* Second, the court must be satisfied that the early termination is "warranted by the conduct of the defendant." *Id.* Third, the court must find that the early termination is in "the interest of justice." *Id.* If these three requirements have been met, the court must consider whether an early termination is consistent with certain Section 3553(a) factors. Those factors are:

> **(a)(1)** the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> **(2)** the need for the sentence imposed —
>
> . . .
>
> **(B)** to afford adequate deterrence to criminal conduct;
>
> **(C)** to protect the public from further crimes of the defendant;
>
> **(D)** to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> . . .
>
> **(4)** the kinds of sentence and the sentencing range established for
>
> **(A)** the applicable category of the offense committed by the applicable category of defendant as set forth in the [U.S. Sentencing Guidelines] . . . in effect on the date the defendant is sentenced;
>
> **(5)** any pertinent policy statement —
>
> **(A)** issued by the Sentencing Commission pursuant to [28 U.S.C. § 994(a)(2)] subject to any amendments made to

> such a policy statement by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under [28 U.S.C. § 994(p)]); and
>
> **(B)** that, except as provided in section 3742(g), is in effect on the date the defendant is sentenced;
>
> **(6)** the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
>
> **(7)** the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a); *see id.* at § 3583(e) (listing the § 3553(a) factors courts must consider).

## III. ANALYSIS

### A. Mr. Kahn is Eligible for Early Termination of Supervised Release Under 18 U.S.C. § 3583(e)(1)

As a threshold matter, the Court finds that Mr. Kahn is eligible for early termination of supervised release. Mr. Kahn has served more than one year on supervised release. *See* Def.'s Mot. at 2; Gov't Opp'n at 2. The Court is also satisfied that the early termination of supervised release is "warranted by the conduct of the defendant." 18 U.S.C. § 3583(e)(1). Since Mr. Kahn began his term of supervision in January 2021, he "has complied perfectly with all conditions of his supervised release" of supervised release. Def.'s Mot. at 2. In addition to complying with all conditions of supervised release, Mr. Kahn has successfully reintegrated into his community. *Id.* At age 79, Mr. Kahn maintains a stable residence with his wife, attends church on Sundays, and is building close relationships with his children and grandchildren. Def.'s Mot. at 6. Given Mr. Kahn's spotless record on supervised release, along with his efforts to reintegrate into his community, the Court finds that the early termination of supervised release is warranted by Mr. Kahn's conduct. *See* 18 U.S.C. § 3583(e)(1).

The Court also finds that the early termination of Mr. Kahn's term of supervised release is in "the interest of justice." *Id.* The Court sentenced Mr. Kahn to concurrent terms of 36 months'

supervised release, which was (and is) the maximum term authorized by statute. *See* 18 U.S.C. § 3583(b)(2) (authorizing a term of "not more than three years" for a Class C felony); *see also* PSR ¶ 76. A sentence of 22 months of supervised release thus falls within Congress's prescribed term of supervised release for Mr. Kahn's offenses. Moreover, as explained above, Mr. Kahn has fully complied with all terms of supervision during that time. For these reasons, the Court finds that the early termination of supervised release is in "the interest of justice." 18 U.S.C. § 3583(e)(1).

**B. The Relevant 18 U.S.C. § 3553(a) Factors Support the Early Termination of Supervised Release**

Because the threshold requirements for early termination of supervised release under 18 U.S.C. § 3583(e)(1) have been met, the Court next must consider whether early termination is consistent with the relevant 18 U.S.C. § 3553(a) factors. *See* 18 U.S.C. § 3583(e)(1); *accord United States v. Mathis-Gardner*, 783 F.3d 1286, 1288 (D.C. Cir. 2015). This inquiry is guided by the purpose of supervised release, which is to "fulfil[ ] rehabilitative ends." *United States v. Johnson*, 529 U.S. 53, 59 (2000). On balance, the Court finds that the Section 3553(a) factors weigh in favor of an early termination.

*i. Nature and Circumstances of the Offenses*

Mr. Kahn was convicted of serious offenses against the United States. *See* 18 U.S.C. § 3553(a)(1). As explained above, Mr. Kahn founded and led an organization that sold tax-defiance schemes to scores of customers. PSR ¶¶ 14–16. In so doing, Mr. Kahn helped thousands of people frustrate the IRS's tax collection and enforcement efforts. PSR ¶ 18. He also profited off this fraudulent scheme: from 1996 to 2004, his organization made $2 million in membership fees. *Id.* Based on this deceitful conduct, a jury found Mr. Kahn guilty of conspiring to defraud the United States and to commit mail fraud and of committing mail fraud. *See* Verdict Forms. This Court,

understanding the seriousness of the offense, sentenced Mr. Kahn to 20 years of imprisonment and 36 months of supervised release, the statutorily prescribed maximum term of imprisonment and supervised release for his convictions. PSR ¶¶ 72, 76. The serious nature of Mr. Kahn's offenses suggest that a three-year term of supervised release could be necessary to ensure his transition back into the community.

*ii. Mr. Kahn's History and Characteristics*

While Mr. Kahn's criminal history does not weigh in favor of the early termination of supervised release, his characteristics do favor release. 18 U.S.C. § 3553(a)(1). As previously discussed, prior to the instant offenses, Mr. Kahn was convicted in the Middle District of Florida of conspiring to defraud the United States and making false or fraudulent claims to the United States. Approximately 20 years before those convictions, Mr. Kahn was convicted in the North District of Texas of three counts of willful failure to file tax returns, for which he was sentenced to three years' incarceration. PSR ¶ 55. Despite his criminal history, since Mr. Kahn's release from prison and start of home confinement last year, Mr. Kahn has fully complied with all terms of supervision.

*iii. The Need to Afford Adequate Deterrence to Criminal Conduct and Protect the Public from Further Crimes*

Next, the Court finds that requiring Mr. Kahn to complete his term of supervised release is unnecessary to "afford adequate deterrence to criminal conduct" and "to protect the public from further crimes of the defendant." 18 U.S.C. § 3553(a)(2)(B)–(C). Based on the information before it, the Court has no reason to believe that Mr. Kahn will reoffend. Based on its analysis of Mr. Kahn's offenses and characteristics, the Probation Office does not believe that Mr. Kahn, at age 79, poses a danger to the community. None of Mr. Kahn's offenses involved violence. PSR at p. 13–15. Finally, since his release from prison, he has complied with all terms of supervision. In so

doing, Mr. Kahn has demonstrated his respect for this Court and for the law. For these Mr. Kahn, the Court has no reason to believe he will commit further crimes.

The government nevertheless insists that a full period of supervised release is necessary "because of the seriousness of defendant Kahn's crimes and to continue to deter him from engaging in criminal conduct." Gov't Opp'n at 2. In support of its argument that "Mr. Kahn might still wish to offer followers" "the same false and frivolous positions that he promoted through ARL," the government points to a blog, Year of Jubile. *Id.* at 3–4. The blog, apparently run by two individuals, displays profiles of certain incarcerated and formerly incarcerated individuals and contains a letter written by Mr. Kahn, shortly after his release from incarceration, as well as a written interview of and a recorded phone call with Mr. Kahn, both dated at least one year before release. *Id.* The government argues that certain statements attributed to Mr. Kahn indicate that he still wishes to share a disrespect for the law with others. *Id.*

The Court does not share the government's concerns. Only the letter posted to the blog is potentially relevant to this Court's determination on Mr. Kahn's motion, given its timing. In the letter, Mr. Kahn appears to acknowledge and respect the conditions of his release. *See* Ex. A to Gov't Opp'n, ECF No. 585-1, at 3. Additionally, none of his statements indicate a current willingness to participate in unlawful activities. Regardless, Mr. Kahn is not at liberty to commit the same or different crimes. Even with the early termination of the supervised release imposed by this Court, Mr. Kahn remains under supervised release by the Middle District of Florida. Finally, Mr. Kahn, through counsel, has represented to the Court "that if he has any 'followers,' he is unaware of them." Def.'s Reply at 2. Thus, because requiring Mr. Kahn to finish his full term of supervised release is not necessary to deter future criminal conduct or to protect the public, this factor weighs in favor of the early termination of supervised release.

*iv. Sentencing Range for Mr. Kahn's Offenses*

The sentencing range established for Mr. Kahn's offenses further supports the early termination of supervised release. As explained above, the Court sentenced Mr. Kahn to the maximum term of supervised release: 36 months. *See* 18 U.S.C. § 3583(b)(2); *see also* PSR ¶ 76. Terminating his supervised release after 22 months is thus fully consistent with Congress's prescribed term of supervised release for Mr. Kahn's offenses.

*v. Pertinent Policy Statement*

The Court is not aware of any "pertinent policy statement," so this factor has no impact on the Court's analysis. 18 U.S.C. § 3553(a)(5).

*vi. Need to Avoid Unwarranted Sentencing Disparities*

Reducing Mr. Kahn's term of supervised release from 36 months to 22 months will not cause "unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). Mr. Kahn was convicted at trial alongside three other ARL employees: Stephen Hunter, Danny True, and Allan Tanguay. PSR ¶¶ 8–10. A third ARL employee, Jerry Williamson, pleaded guilty. *Id.* at ¶ 11. As explained in the sections that follow, the early termination of Mr. Kahn's supervised release will not create an unwarranted sentence disparity with any of these co-defendants. *See* 18 U.S.C. § 3553(a)(6).

a. Stephen Hunter and Danny True

Co-defendants Stephen Hunter and Danny True were employees of ARL. PSR ¶¶ 15–16. Hunter and True were both convicted of conspiring to defraud the United States and three counts of mail fraud. *Id.* ¶¶ 8–9. Hunter and True both had a Criminal History Category of I. *See* Final PSR, *United States v. Hunter*, No. 08-cr-271-2, ECF No. 503, at ¶ 56; Final PSR, *United States v. True*, No. 08-cr-271-3, ECF No. 505, at ¶ 56. The Court sentenced each defendant to an aggregate

term of ten years' imprisonment plus 36 months' supervised release. Am. J, *Hunter*, ECF No. 530, at 3–4; Am. J., *True*, ECF No. 532, at 3–4. Because Hunter and True were convicted of three counts of mail fraud while Mr. Kahn was convicted of only one, reducing Mr. Kahn's term of supervised release to 22 months would not create an unwarranted sentencing disparity with these co-defendants.

b. Allan Tanguay

Co-defendant Allan Tanguay was another employee of ARL. PSR ¶¶ 15–16. Tanguay was convicted of conspiring to defraud the United States and one count of mail fraud. *Id.* ¶ 10. Like Hunter and True, Tanguay had a Criminal History Category of I and was sentenced to an aggregate term of ten years' imprisonment as well as the maximum term of supervised release: 36 months. Am. J., *United States v. Tanguay*, No. 08-cr-271-5, ECF No. 406, at 2. Last year, Tanguay, at age 78, moved *pro se* for an early termination of supervised release after serving approximately half of his term of supervised release without incident. Mot., *Tanguay*, ECF No. 569. This Court reduced Tanguay's supervised release period to 22 months. Order, *Tanguay*, ECF No. 577. Given that Mr. Kahn and Tanguay were a) convicted of the same offenses and b) of similar ages and had served approximately half of their supervised release term before moving for a reduction, granting Mr. Kahn's motion would maintain consistency with his co-defendant Tanguay.

c. Jerry Williamson

Mr. Kahn's fourth co-defendant, Jerry Williamson, also worked as an employee for ARL. Plea Agreement, *United States v. Williamson*, No. 08-cr-271-4, ECF No. 104, at ¶¶ 11–12. Based on his participation in the business, Williamson pleaded guilty to one count of mail fraud. *Id.* ¶ 12. The Court sentenced him to five months in a community correctional facility, plus 36 months of supervised release. Am. J, *Williamson*, ECF No. 445, at 1–2. Unlike Mr. Kahn, however,

Williamson had a Criminal History Category of VI. Sentencing Mem., *Williamson*, ECF No. 338, at 6 n.4. Thus, the disparity between Williamson's and Kahn's terms of supervised release is not "unwarranted." 18 U.S.C. § 3553(a)(6).

*vii. Need to Provide Restitution*

Finally, Mr. Kahn was not sentenced to pay restitution, so "the need to provide restitution to any victims of the offense" does not affect the Court's analysis. 18 U.S.C. § 3553(a)(7).

* * *

Taken together, the Court finds that the relevant Section 3553(a) factors support the early termination of supervised release. Though the serious nature of Mr. Kahn's offenses could suggest that a three-year term of supervised release is necessary to ensure his transition into the community, Mr. Kahn's record while under supervision shows this not to be the case. Early termination is further supported by the fact that Mr. Kahn was originally sentenced to the maximum term of supervised release authorized by statute, is unlikely to reoffend, and has both the means and ability to continue to make payments toward the satisfaction of his fine. For these reasons, the Court finds that the Section 3553(a) factors support the early termination of supervised release.

## IV. CONCLUSION

Because Mr. Kahn meets the threshold requirements for an early termination of supervised release under 18 U.S.C. § 3583(e)(1), and because the relevant 18 U.S.C. § 3553(a) factors support an early termination, the Court will **GRANT** Mr. Kahn's motion. A separate Order consistent with this Memorandum Opinion shall issue this date.

Signed this 2nd day of November, 2022.

Royce C. Lamberth

Hon. Royce C. Lamberth
United States District Judge